IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MONICA CHAMBLIS,                          )
                                          )
    Plaintiff,                            )
                                          )
    v.                                    )     CASE NO. 2:22-cv-548-JTA
                                          )     (WO)
MARTIN J. O'MALLEY,[1]                     )
Commissioner of Social Security,          )
                                          )
    Defendant.                            )

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Monica Yvette Chamblis ("Chamblis"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[2] The Commissioner denied Chamblis' claim for a period of disability and Disability Insurance Benefits ("DIB"). The Court construes Chamblis' brief in support of her Complaint (Doc. No. 12) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint as a motion for summary judgment (Doc. No. 15). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 13, 14.)

---

[1] Martin J. O'Malley was appointed Commissioner for the Social Security Administration on December 20, 2023, and under Federal Rule of Civil Procedure 25(d) is automatically substituted as the defendant. *See* Fed. R. Civ. P. 25(d).

[2] Document numbers as they appear on the docket sheet are designated as "Doc. No."

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that Chamblis' motion for summary judgment is due to be DENIED, the Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I.      PROCEDURAL HISTORY AND FACTS

Chamblis is an adult[3] female with a college education who previously worked as a tax preparer. (R. 39, 40.)[4] She alleged a disability onset date of December 31, 2015, due to depressive disorder, osteoarthritis in multiple joints, and a chronic infection in her colon. (R. 83.)

On May 6, 2020, Chamblis filed an application for a period of disability and DIB under Title II (42 U.S.C. §§ 401, *et seq.*) of the Social Security Act. (R. 175-176.) The application was denied initially and on reconsideration. (R. 76-81, 84-87.) Following an administrative hearing, the Administrative Law Judge ("ALJ") denied Chamblis' request for benefits in a decision dated December 30, 2021. (R. 7-22.) Chamblis requested review by the Appeals Council, and it denied review. (R. 1-6.) Thus, the hearing decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted) ("When, as in this case, the ALJ denies

---

[3] She was 50 years old at the time of the administrative hearing. (R. 55, 64.)

[4] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 16.)

benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision.").

On September 15, 2022, Chamblis filed this action seeking review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 12, 15, 19.) This matter is ripe for review.

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). The court " 'must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence.' " *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of

fact and are reviewed *de novo. Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB must prove that she is disabled. *See* 20 C.F.R. § 404.1505. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by an ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds

that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that she is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20

C.F.R. §§ 404.1520(g), 404.1560(c). *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) ("The burden then shifts to the Secretary to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."). The ALJ may use testimony from a vocational expert ("VE") "to determine whether the claimant has the ability to adjust to other work in the national economy" that she can perform.[5] *Bacon v. Comm'r of Soc. Sec*., 861 F. App'x 315, 317 (11th Cir. 2021) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); 20 C.F.R. § 404.1566(e)). If the ALJ determines the claimant can perform other jobs in the national economy, "then the burden shifts back to the claimant to show that she is unable to perform the jobs suggested by the [ALJ.]" *Id*. (citing *Washington*, 906 F.3d at 1359). *See Hale*, 831 F.2d at 1011 ("Finally, the burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the Secretary.") (citations omitted).

## IV.    ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ found that Chamblis last met the insured status requirements of the Social Security Act on December 31, 2017, and she had not engaged in substantial gainful activity since the alleged onset date. (R. 13.) The ALJ determined that Chamblis suffers from the following severe impairments that significantly limit her ability to perform basic work activities:

---

[5] "A VE 'is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.'" *Bacon,* 861 F. App'x at 317 (citing *Phillips*, 357 F.3d at 1240). "When the ALJ uses a [VE], the ALJ will pose hypothetical question(s) to the [VE] to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

hyperlipidemia, gastrointestinal disorder-colitis and gastritis, depression parapsoriasis, degenerative disc disease, hearing loss, and an anxiety disorder. (R. 13.) The ALJ also considered the record evidence concerning Chamblis' uterine fibroids, ovarian cyst, hemorrhoids, otitis, and conjunctivitis, but described these ailments as "minor issues" and found them not to be severe impairments. (*Id.*) The ALJ concluded that Chamblis' severe impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart B, Appendix 1. (*Id.*)

After consideration of the entire record, the ALJ determined that Chamblis retains the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),[6] except she can never climb ladders, ropes, or scaffolds. The ALJ found the following workplace limitations applicable to Chamblis:

> She can hear and understand simple instructions. [She] can never work at unprotected heights, with moving mechanical parts, but she can work in weather, humidity, and wetness occasionally. She can also tolerate occasional exposures to dust, odors, fumes, pulmonary irritants, and extreme cold and extreme heat. Mentally, she can perform simple, routine tasks, and she is able to perform simple work-related decisions. She is also able to manage changes in the work setting. She will also require one (1) absence per month.

(R. 17.) In accordance with this RFC, the ALJ found Chamblis was unable to perform her past relevant work as a tax form preparer because "the demands of said work exceed" her

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

RFC. (R. 19-20.) The ALJ determined, with the assistance of testimony from a VE, that Chamblis was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, specifically, the jobs of garment sorter, marker and ticketer/tagger. (R. 21.) The ALJ concluded that Chamblis has not been under a disability from the alleged onset date of disability through the date last insured. (R. 22.) Hence, the ALJ also concluded that Chamblis is not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id.*)

## V.    DISCUSSION

Chamblis presents four arguments in this appeal. First, she argues the ALJ failed to consider her ability to work while being absent once a month. Second, she argues the ALJ relied on a flawed hypothetical question to the VE in determining the RFC. Third, she argues the ALJ failed to develop the record. Fourth, she argues the ALJ failed to properly evaluate her subjective complaints.

The Court addresses each argument in turn.

A.    Absence from Work

Citing *Sczepanski v. Saul*, 946 F.3d 152 (2d Cir. 2020) and *Mosher v. Saul*, 2019 WL 3779995 (N.D. Fla. Aug. 12, 2019), Chamblis argues that remand is warranted because the ALJ failed to consider her ability to obtain and maintain a job while missing work once a month during the probationary period. (Doc. No. 12.) Chamblis contends the VE testified that an individual could not maintain their position if they missed work once a month during the probationary period and the ALJ conceded that she would miss work once a

month. (*Id*. at 3.) Chamblis contends that an absence one day per month would prevent the performance of a probationary period for a job, thus she is disabled. (*Id*.)

The Commissioner responds that *Sczepanski* is neither controlling nor applicable here. (Doc. No. 15 at 4.) The Commissioner contends *Sczepanski* is distinguishable from this case because there is no evidence here that the jobs cited by the VE required probationary periods. (*Id*.) The Commissioner further contends that the ALJ properly relied on the VE's testimony.

At the fifth and final step of the evaluation process, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989)). "In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id*. (citation omitted).

Here, the ALJ posed six hypotheticals to the VE.[7] (R. 50-54.) For each hypothetical, the ALJ asked the VE "to assume an individual with the same age, education, and past relevant work as [Chamblis.]" (R. 50.) The ALJ proceeded:

ALJ:      For hypothetical #1, I'd like for you to consider an individual who could occasionally lift and carry up to 50 pounds, frequently lift and carry up to 25 pounds. Assume an individual that could sit, stand, or walk for six hours each out of an eight-

---

[7] Because the parties do not dispute the substance of the hypotheticals posed to the VE which yielded the identification of three jobs Chamblis could perform at the light level of exertion in the national economy, and the ALJ adopted those three jobs, the Court recounts only the portion of the administrative hearing transcript that is relevant to those three jobs.

hour day. Assume an individual who should never climb ladders, ropes, or scaffolds. Assume an individual who is able to hear and understand simple oral instructions. Assume an individual who should never work around unprotected heights or dangerous moving mechanical parts. Assume an individual who can occasionally be exposed to weather, humidity and wetness, dust, odors, fumes, and pulmonary irritants, occasional extreme cold, occasional extreme heat. Assume an individual who would be able to perform simple and routine tasks, who be able to make simple work-related decisions involved in the use of judgment. And assume an individual who is able to make simple work-related decisions involving workplace changes. Further assume this individual would be absent from work one day per month. Could such an individual do any past relevant work of the claimant or any other work that exists in the national economy under hypothetical #1?

VE:        Yes, Your Honor. The past relevant work of a tax form preparer . . . would not remain available. . . .

ALJ:      Okay. And for hypothetical #2, I'd like for you to consider hypothetical #1 except that for hypothetical #2, I would change the exertional demand to light work with the ability to occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds. Also that the individual can still sit, stand, or walk for six hours each out of an eight-hour day. And as far as the mental limitations, I would add that this individual is able to interact with coworkers occasionally, and with the general public, never. With those additional limitations, could such an individual do any work that exists in the national economy with those limitations?

VE:        Yes, Your Honor. Such an individual could perform the job of a garment sorter, DOT 222.687-014, light physical demand level, SVP of 2, unskilled. There are 222,000 jobs estimated in the national economy. Such an individual could perform the job of a marker, DOT 209.587-034, light physical demand level, SVP of 2, unskilled. There are 1,878,000 jobs estimated in the national economy. And such an individual could perform the job of a ticketer/tagger, DOT 229.587-018, light physical demand level, SVP of 2, unskilled. And there are 2,016,000 jobs estimated in the national economy.

(R. 50-52.) When counsel for Chamblis examined the VE, counsel simply asked one question:

ATTY:      Ms. Howell, with respect -- now, under the Third Circuit Region, we looked at a case where the vocational expert testified that especially in the context of unskilled SVP 2 jobs, that during the probationary period, there is typically no tolerance for absences.  Would you agree with that statement?

VE:        Yes, I would.

ATTY:      Thank you. That's all the questions I have, Your Honor.

(R. 54-55.)

Chamblis does not contend that the hypotheticals posed to the VE did not account for all of her impairments. Rather, she contends that she is disabled because the ALJ's RFC finding, which includes the restriction that she will be absent one day per month, precludes her from keeping a job through the probationary period for the jobs identified by the VE. The Court disagrees and finds that Chamblis has not met her burden to show that she cannot perform the work identified by the ALJ. *See Washington*, 906 F.3d at 1359.

Chamblis misstates the VE's testimony by arguing that she cannot fulfill the requirements of the jobs identified by the ALJ because the VE testified "that if an individual missed work even once a month during the probationary period, she could not work." (Doc. No. 12 at 3) (citing R. 54-55). As the above-quoted testimony shows, the VE never testified a garment sorter, marker or ticketer/tagger had probationary periods. Neither counsel for Chamblis nor the ALJ asked that question. The VE's testimony as to probationary periods was a general response to a question from Chamblis' counsel regarding no tolerance for absences during the probationary period in the context of

11

unskilled SVP 2 jobs. (R. 54.) Although the VE testified that garment sorter, marker or ticketer/tagger were unskilled SVP 2 jobs, there is no testimony or evidence in the record showing the actual probationary period, if any, for those jobs which would lead a reasonable person to conclude that Chamblis could not perform those jobs. *See Lee v. O'Malley,* No. CV 323-052, 2024 WL 710894, at *5 (S.D. Ga. Feb. 21, 2024), *report and recommendation adopted,* No. CV 323-052, 2024 WL 1119489 (S.D. Ga. Mar. 14, 2024) (rejecting similar argument by claimant that ALJ could not rely on testimony of VE to conclude there were jobs in the national economy which claimant could perform). Moreover, the VE testified that Chamblis could perform the identified jobs and there was no specific information contradicting the VE's testimony. Accordingly, the Court finds that Chamblis' argument is not supported by the record and the ALJ's decision is supported by substantial evidence.

Further, the Court is not persuaded by Chamblis' reliance on *Sczepanski* and *Mosher*. Neither case is controlling law or binding precedent on this Court. Another district court in Alabama has aptly and succinctly distinguished *Sczepanski* and *Mosher* in rejecting the same argument as follows:

> In *Sczepanski*, the vocational expert testified that the claimant would not be permitted to miss any days of work during a probationary period. *Sczepanski*, 946 F.3d at 155. Although the claimant's residual functional capacity included "up to one" day's absence from work per month, the ALJ found the claimant could perform jobs in the national economy because ability to work during a probationary period is irrelevant to the disability determination. *Id*. at 155–56. The Second Circuit vacated and remanded because "the ability to complete a probationary period is relevant to a claimant's ability to perform significant numbers of jobs in the national economy at step five." *Id*. at 159, 161.

Similarly, in *Mosher*, the vocational expert testified that a claimant who had to miss one day of work per month would not be able to complete a probationary period for entry-level positions. *Mosher*, 2019 WL 3779995, at *6. Although the ALJ found the claimant would be absent once per month, she found the claimant could work. *Id*. The district court remanded for further proceedings because "the implication" of the "exchange between the ALJ and [vocational expert]" was that the specific jobs at issue required probationary periods, but the ALJ's decision did not address the impact of the claimant's absenteeism.

Unlike *Sczepanski and Mosher*, there is no testimony or evidence indicating that a probationary period exists for the jobs relevant to the determination of whether Mr. Reynolds can work. (*See* r. at 72–80). Rather, the unequivocal testimony from the vocational expert was that Mr. Reynolds could miss one day of work per month and the relevant jobs would still be available. (*Id*. at 78). Therefore, there was no testimony on the issue of absences during a probationary period for which the ALJ was required to account or about which she was bound to inquire.

*Reynolds v. Comm'r, Soc. Sec. Admin*., No. 4:21-CV-01567-ACA, 2023 WL 401356, at *4 (N.D. Ala. Jan. 25, 2023). This Court is persuaded by the opinion in *Reynolds*. In this case, alike *Reynolds*, "there is no testimony or evidence indicating that a probationary period exists for the jobs relevant to the determination of whether" Chamblis can work. *See id*. As stated above, the VE testified that Chamblis could perform the identified jobs and that testimony included consideration that Chamblis would be absent one day per month as part of the ALJ's hypothetical. The Court finds no reversible error.

B.     Hypothetical Question to VE

Chamblis argues the ALJ relied on a flawed hypothetical question to the VE. (Doc. No. 12 at 4.) Chamblis asserts the ALJ's hypothetical failed to address the RFC restrictions concerning her ability to concentrate over a period of time, maintain a particular work pace

over the course of a workday or workweek and her ability to persist at tasks. (*Id*. at 4-5.) Chamblis claims this failure constitutes reversible error.

The Commissioner responds that Chamblis' argument is belied by the record. (Doc. No. 15 at 4.) The Commissioner argues that the RFC is more than sufficient to account for Chamblis' deficiencies in concentration, persistence and pace. (*Id*.)

"The Eleventh Circuit has held that an ALJ's hypothetical question must account for a claimant's limitations in concentration, persistence, and pace." *Reynolds*, 2023 WL 401356, at *5 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180–81 (11th Cir. 2011)). "An ALJ may do so by explicitly including those limitations in the hypothetical questions to a vocational expert or by 'limiting the hypothetical to include only unskilled work' if the 'medical evidence demonstrates that [the] claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace.'" *Id*. (citing *Winschel*, 631 F.3d at 1180).

Here, the ALJ found based on the evidence that Chamblis had moderate limitations in concentration, persistence and pace. (R. 15.) The ALJ qualified that finding by noting, "[w]hile Chamblis endorsed significant problems with attention, concentration, and short-term memory, the progress notes submitted by her treating counseling therapists and physicians do not describe significant cognitive abnormalities . . . [Chamblis] noted that she was able to follow written instructions 'very well' …." (R. 15.) The ALJ concluded that the record as a whole "indicates that [Chamblis] had a moderate limitation in sustaining focus, attention, and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings." (R. 15.) The ALJ

accounted for these limitations when she asked the VE to consider "an individual with the same age, education, and past relevant work as this claimant[ ]" and "an individual who would be able to perform simple and routine tasks, who [would] be able to make simple work-related decisions involved in the use of judgment. And assume an individual who is able to make simple work-related decisions involving workplace changes." (R. 50, 51.) Chamblis has failed to show that she had any additional limitations in concentration, persistence and pace beyond those identified by the ALJ in her hypothetical questions to the VE.

In addition, the Eleventh Circuit has repeatedly concluded that similar limitations regarding ability to understand and carry out simple instructions and to perform simple tasks sufficiently accounts for moderate difficulties in maintaining concentration, persistence, and pace in both the RFC and hypothetical questions to the VE. *See Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 490 (11th Cir. 2015) (finding a limitation to "simple unskilled, routine, and repetitive tasks, one-to three-step instructions" was sufficient to account for moderate limitations in concentration, persistence, and pace); *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 611–13 (11th Cir. 2015) (finding substantial evidence supported ALJ's hypothetical that claimant could only perform "simple, non-detailed tasks" where ALJ found moderate limitations in concentration, persistence, and pace); *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 767 (11th Cir. 2014) (finding moderate maintaining attention were encompassed by question which stated the hypothetical claimant "could understand, remember, and carry out simple instructions and procedures, ... may show occasional difficulty with more complex tasks, [and] could

sustain task and perform an acceptable pace"); *Kunz v. Comm'r of Soc. Sec.*, 539 F. App'x 996, 996 (11th Cir. 2013) (finding the VE understood and considered claimant's moderate limitations in maintaining concentration, persistence, and pace when the ALJ included the limitations of claimant's "moderate difficulties restrict[ing] his ability to work to the extent that he could only comprehend and perform simple routine tasks and interact with others occasionally" in the hypothetical question); *Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 541 (11th Cir. 2014) ("ALJ adequately accounted for all of [claimant's] impairments in the hypothetical posed to the VE because he implicitly accounted for [claimant's] limitations in concentration, persistence, and pace when he imposed a limitation of simple work.").

Consequently, the Court finds that the limitations the ALJ included in the hypothetical adequately addressed Chamblis' moderate limitations of her concentration, persistence and pace, and finds the ALJ's findings are supported by substantial evidence. *See Kunz*, 539 F. App'x at 996-7 (finding that hypothetical questions "need only include the claimant's impairments, not each and every symptom of the claimant"). The Court finds no reversible error.

C.     Development of Medical Record

Chamblis contends the record does not contain any medical opinions as to the severity of her mental or physical impairments during the period at issue. (Doc. No. 12 at 5.) She asserts the ALJ failed to develop the record by not obtaining a consultative examination, not requesting an opinion from a treating or examining source, and not taking testimony from a relevant medical source. (*Id*. at 5-6.) She argues the ALJ's failure to

obtain an opinion as to her mental functioning is in violation of *McCall v. Bowen*, 846 F.2d 1317 (11th Cir. 1988), and the ALJ should have requested a consultative evaluation as to her physical functioning. (*Id*. at 6.)

The Commissioner responds that the record was adequately developed. (Doc. No. 15 at 6.) The Commissioner argues the ALJ was not required to order further medical evaluation because Chamblis did not request one and the record was sufficient for the ALJ to make an informed decision. (*Id*.)

"It is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995)). "Nevertheless, the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of [her] claim." *Id*. (citing 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.912(c)).

The regulations provide that an ALJ "may" refer a claimant to "one or more physical or mental examinations or tests" if the medical sources do not provide "sufficient medical evidence about [the claimant's] impairment for [the ALJ] to determine whether [the claimant is] disabled." 20 C.F.R. § 404.1517. Under 42 U.S.C. § 421(h)(1), an initial determination "shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure (1) in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review...." The Eleventh Circuit interpreted this duty to apply to ALJ decisions in the 1988 case *McCall v. Bowen*, 846 F.2d 1317, 1320

17

(11th Cir. 1986), but later noted in *Sneed v. Barnhart*, 214 F. App'x 883, 886 (11th Cir. 2006), that § 421(h)(1) may not apply to cases heard by an ALJ. "An ALJ has regulatory flexibility to evaluate mental impairments to determine their severity." *Sneed*, 214 F. App'x at 886. The Eleventh Circuit has explained that an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (ALJ did not have to order consultative examination on his own motion to determine claimant's mental capacity because the record contained evidence that claimant was intelligent and his depression was alleviated by medication).[8]

---

[8] This Court pretermits discussing whether *McCall* remains good law as other courts, when faced with this issue, have simply followed the principle of law established in *Ingram*. *See Roberts v. Kijakazi,* No. 8:21-CV-508-AEP, 2022 WL 4463596, at *7 (M.D. Fla. Sept. 26, 2022) (noting "the Eleventh Circuit has since walked back that interpretation" in *McCall* to conclude that "Plaintiff's interpretation of 42 U.S.C. § 421(h) no longer prevails in the Eleventh Circuit."); *Boutwell v. Kijakazi*, No. 2:20-CV-531-KFP, 2022 WL 1252385, at *3 (M.D. Ala. Apr. 27, 2022); *Agan v. Saul*, No. 8:20-CV-807-TGW, 2021 WL 3721845, at *5 (M.D. Fla. Aug. 23, 2021) (holding § 421(h) "does not apply at the hearing level"); *Fernandez v. Saul*, 533 F. Supp. 3d 1071, 1078 n.6 (M.D. Ala. 2020) (noting "the *McCall* court did not explicitly find that the ALJ erred in failing to order a consultative examination" and stating "the undersigned is not persuaded that *McCall* requires remand"). *Contra Ducker v. Astrue*, No. 3:09CV973-MHT, 2011 WL 1130862, at *3 (M.D. Ala. Feb. 23, 2011), *report and recommendation adopted,* No. 3:09CV973-MHT, 2011 WL 1135133 (M.D. Ala. Mar. 25, 2011) ("*Sneed*, of course, did not overrule *McCall,* and it remains the law of this Circuit.").

Furthermore, regardless of the applicability of § 421(h), the ALJ satisfied her duty here because Dr. Harold Veits, a state agency pyschological consultant, reviewed the record and completed a Psychiatric Review Technique. (R. 65-66.) *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants ... are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."). Courts have concluded that an ALJ's reliance on a state agency medical consultant's review is appropriate to satisfy any requirement imposed by § 421(h)(1) even where the ALJ did not order a consultative psychological examination. *See, e.g., Parker v. Colvin*, 2016 WL 1092237, at *4 (M.D. Ala. Mar. 21, 2016) ("The record before the ALJ in this case was sufficient to permit the ALJ to assess the severity of Plaintiff's OCD and dysthymia without the need for ordering a consultative examination by a qualified psychiatrist or psychologist."); *Harris*

Here, the Court finds the ALJ was not required to order a mental evaluation because the record was sufficiently developed for the ALJ to make an informed decision as to Chamblis' mental functioning during the relevant period. The ALJ explained that she considered Chamblis' responses in her Adult Function Report, the daily activities reported by her son in the Third Party - Adult Function Report, her hearing testimony, and the progress notes submitted by her treating counseling therapists and physicians. (R. 14, 15.) For example, in one report, Chamblis stated that she had no problem with her personal care; prepared her own meals; completed household chores; drove a car short distances and to doctors' appointments; and she spent time with others at church, bible study, family dinners or events once a week or every other week. (R. 235, 236.) Such "activities evidence[ ] an ability to maintain a routine and initiate regular tasks." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) (citation omitted). In addition, the medical records indicate that Chamblis was working with a psychiatrist associated with the Veterans Administration during the relevant time and she denied any history of psychiatric hospitalizations and denied any history of suicide attempts. (R. 1305.) The medical records also show that in February 2017, Chamblis denied depression, anxiety, insomnia and mood swings. (R. 1496.) Accordingly, the Court finds that the record

---

*v. Colvin*, 2014 WL 5844240, at *10 (S.D. Ala. Nov. 12, 2014) ("In this case, Plaintiff is correct that the ALJ did not order a consultative mental examination. However, the record does contain the opinion of State Agency psychologist Dr. Joanna Koulianos, Ph.D., who reviewed Plaintiff's medical records and completed a Psychiatric Review Technique and a Mental RFC Assessment. Thus it is clear that the ALJ complied with 42 U.S.C. § 421(h) in having Dr. Koulianos conduct a review of the medical records and compete a Psychiatric Review Technique[.]").

contained sufficient evidence for the ALJ to make an informed decision and a psychological examination was unnecessary.

Likewise, the Court finds that no consultative evaluation as to Chamblis' physical functioning was required. The ALJ thoroughly considered Chamblis' testimony and the medical records for the relevant period, and the record contained sufficient evidence for the ALJ to make an informed decision. For example, the ALJ explained that Chamblis remained able to orally communicate without assistive devices though she reported that she experienced severe hearing loss. (R. 17.) The ALJ also explained that objective medical scans of Chamblis' spine identified mild degenerative changes and disc disease. (R. 17.) The ALJ discussed Chamblis' reported normal physical abilities and skin rashes in a December 2015 annual examination; the digestive abnormalities she described in March 2016 that were not accompanied by pain; and that in December 2016, Chamblis refused medications, lab work, instructions and all medical services when she presented with abdominal pain. (R. 17.) The ALJ noted, "[o]verall the treatment notes do not consistently describe severe functional limitations, debilitating pain, chronic fatigue, or the inability to complete normal daily activities, strongly supporting the determination that she remains able to work at the light level of exertion. (Exhibit 1F, pgs. 206-207, 229, 241, 250, 271, 274, 289, 303)." The Court has found nothing in the record that contradicts these statements. Accordingly, the record contained sufficient evidence for the ALJ to make an informed decision as to Chamblis' physical functioning during the relevant period.

Finally, the Court finds no unfairness or clear prejudice to Chamblis to justify a remand. "Ordering a consultative examination is a discretionary matter for the ALJ and

would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (quoting 20 C.F.R. § 416.919a(b)). Before the Court will remand a case for further development of the record, there must be a showing that the ALJ's failure to develop the record led to evidentiary gaps that resulted in unfairness or clear prejudice. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995)). At a minimum, clear prejudice "requires a showing that the ALJ did not have all of the relevant evidence before [her] in the record ... or that the ALJ did not consider all of the evidence in the record in reaching [her] decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (citation omitted).

Notably, at no time during the hearing before the ALJ did Chamblis or her counsel request an additional consultative examination or psychological evaluation,[9] nor suggest that further medical evidence was needed to evaluate Chamblis' condition (R. 32–55), nor argue to the Appeals Council that an additional consultative examination or psychological evaluation was warranted (R. 274-275). Additionally, it appears the ALJ considered all the

---

[9] The prior administrative findings noted that there were insufficient medical records as to Chamblis' mental impairment prior to the date last insured. (R. 66.) Despite these findings, Chamblis did not request a psychological examination prior to or during the administrative hearing. Nor does Chamblis argue or suggest how a psychological examination ordered by the ALJ for her DIB application filed in 2020 would have – or could have – provided information as to the status of her mental impairment during the relevant period. Chamblis does not even suggest how the findings of a current psychological examination would relate back to the relevant period, which expired more than six years ago.

medical records that existed for the relevant period, and Chamblis does not challenge the accuracy of these records or the ALJ's analysis of these records.

Furthermore, Chamblis "has failed to point to anything in the record which suggests that additional medical evidence specific to [her] situation might be gathered, nor has [she] alleged undiscovered facts or an undeveloped avenue of inquiry." *Graham*, 129 F.3d at 1423. Chamblis does not state any limitations she allegedly possesses that the ALJ failed to consider, nor does she state any limitations a consultative examination may support. Consequently, the Court finds that sufficient evidence supported the ALJ's determination and any outside consultation was unnecessary.

In the end, Chamblis must bear the responsibility and consequences for the limited medical record, as it was her burden, not the ALJ's, to produce medical evidence supporting her claim for disability. *See Ellison*, 355 F.3d at 1276 ("[T]he claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of [her] claim."). To the extent Chamblis believes additional medical evidence would have changed the outcome of this case—though she does not make clear what evidence that might be—she failed to obtain it, failed to provide any justification as to why she did not or could not obtain it, and failed to demonstrate that the current medical evidence of record was insufficient to support the ALJ's disability determination. *See Townsend v. Comm'r of Soc. Sec.*, 555 F. App'x 888, 891–92 (11th Cir. 2014) (no prejudice was shown because the claimant did not suggest what more the law judge may have learned from the additional evidence). Therefore, the ALJ did not err in failing to

order a consultative examination or psychological examination under these circumstances and the Court finds no reversible error.

D.     Evaluation of Subjective Symptoms

Chamblis contends the ALJ failed to properly evaluate her subjective statements. (Doc. No. 12 at 7.) Chamblis asserts the ALJ improperly focused on a perceived lack of clinical and objective evidence regarding her symptoms of pain and related limitations caused by psoriasis and arthritis. (*Id*. at 9.) She contends the ALJ failed to offer any other reason for discounting her subjective statements regarding her chronic pain and related limitations other than a reference to the clinical and objective medical evidence. (*Id*. at 10.) Chamblis further contends that the ALJ gave too much weight to consideration of her daily activities as there is no evidence that she engaged in activities which contradict her allegations. (*Id*. at 12.)

The Commissioner responds the ALJ properly evaluated Chamblis' subjective allegations. (Doc. No. 15 at 6.) The Commissioner asserts the ALJ correctly noted the treatment notes in the record do not establish that Chamblis has severe functional limitations, debilitating pain, chronic fatigue or the inability to complete normal daily activities. (*Id*.) The Commissioner further asserts the ALJ explained Chamblis' mental issues were treated with routine counseling sessions and medication management, and posed no severe restriction to her ability to work. (*Id*. at 6-7.) The Commissioner contends that no reversible error exists.

Social Security Ruling ("SSR") 16-3p "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and

23

limiting effects of symptoms in disability claims. . . ." Soc. Sec. Ruling 16-3p, 82 Fed. Reg. 49462-03, 2017 WL 5180304 (Oct. 25, 2017). This ruling eliminates the use of the term "credibility" from the sub-regulatory policy and stresses that the ALJ "will not assess an individual's overall character or truthfulness" but instead will "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the [ALJ's] evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities ...." *Id*. at 49463, 49467. "Whether before or after SSR 16–3p, an ALJ may choose to discredit a claimant's testimony about his or her symptoms." *Ring v. Berryhill*, 241 F. Supp. 3d 1235, 1252 (N.D. Ala. 2017), *aff'd sub nom. Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966 (11th Cir. 2018) (per curiam).

When evaluating a claimant's symptoms, a two-step process must be used. *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 703 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463). At step one, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463-64. At step two, the ALJ must evaluate the intensity and persistence of the symptoms and determine the extent to which they limit the claimant's ability to perform work-related activities. *Id*. at 49464-66. In doing so, the ALJ must examine the entire case record, including the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information

provided by medical sources and other persons; and any other relevant evidence in the case record. *Id*. at 49464. The ALJ also must consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms other than treatment; and (7) any other factors concerning the claimant's functional limitations and restrictions due to her pain or symptoms. *Id*. at 49465-66; *see* 20 C.F.R. § 404.1529(c)(3). The ALJ must examine the claimant's statements about the intensity, persistence, and limiting effects of symptoms in relation to all other evidence and consider whether they are consistent with the record as a whole. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 81 Fed. Reg. 14166, 14170 (Mar. 16, 2016)); *see also* 20 C.F.R. § 404.1529(c)(4).

If the ALJ discredits a claimant's subjective testimony, she "must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding. *Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 832 (11th Cir. 2013) (per curiam) (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). When the ALJ's reasons for discrediting a claimant's statements about pain or other symptoms are clearly articulated and supported by substantial evidence in the record, a reviewing court will not disturb the ALJ's findings. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "Where proof of a disability is based upon subjective evidence and a credibility determination is a critical factor in the decision, if the ALJ discredits the claimant's

testimony as to [her] subjective symptoms, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding." *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582 at *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562).

Chamblis testified at the hearing that, during the relevant period, she suffered from flare ups from her psoriasis, depression (caused by some deaths and murders in her family), anxiety, digestive system problems, colitis, body pain from her neck to her back, and loss of energy. (R. 42, 46, 47.) She also testified that one psoriasis flareup was so bad in 2017 that she was hospitalized for seven days because her face was swollen and had blisters. (R. 43.) She further testified that she suffered from slight hearing loss in her right ear. (R. 45.) She was prescribed and taking medication for abdominal pain, psoriasis, and depression. (R. 43-44.)

Here, in making the RFC finding, the ALJ stated that she considered all of Chamblis' "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. 16.) The ALJ also stated that she considered the "medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." (R. 16.) The ALJ then described the two-step process required by SSR 16-3p. (R. 16.) Thereafter, the ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that [Chamblis'] medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, [Chamblis'] statements concerning the intensity, persistence and limiting effects of these symptoms

are not entirely consistent with the medical evidence and other evidence in
the record for the reasons explained in this decision.

(R. 16.)

In reaching her conclusion, the ALJ extensively discussed the evidence of record,

from Chamblis' complaints of severe neck pain in November 2015 to the cervical spine

MRI scans performed in April 2018, which was well after the date last insured. (R. 17-19.)

The ALJ also discussed Chamblis' hearing testimony and noted how her testimony was not

consistent with the medical record.

> [Chamblis] reported that her main barriers to employment were due to severe
> symptoms related to her parapsoriasis, arthritis, and digestive system
> infections (Hearing testimony and Ex. 3E, pg. 2). She reported that she
> experienced severe abdominal pain, on-going digestive deficits, chronic
> body pain, chronic fatigue, and a greatly reduced ability to function (Hearing
> testimony). She added that she experienced severe psoriasis "flare-ups" that
> caused face blisters, severe pain, limited mobility, and fatigue (Hearing
> testimony). Overall, the medical records describing the period from her
> alleged onset date of December 31, 2015 through her date last insured of
> December 31, 2017 do not fully support the description of her symptoms or
> limitations.

(R. 16.) The ALJ explained how she concluded that Chamblis could perform a reduced

range of light work despite her impairments and subjective symptoms.

> [Chamblis] routinely sought care for a variety of health issues. During
> numerous in-office evaluations, she did not consistently exhibit or describe
> severe physical limitations, debilitating pain, blistering skin, or severe joint
> dysfunction, strongly supporting the above outlined residual functional
> capacity (Exhibit 1F, pgs. 206-207, 229, 241, 250, 271, 274, 289, 303).
>                                      …
> Overall, the treatment notes do not consistently describe severe functional
> limitations, debilitating pain, chronic fatigue, or the inability to complete
> normal daily activities, strongly supporting the determination that she
> remains able to work at the light level of exertion (Exhibit 1F, pgs. 206-207,
> 229, 241, 250, 271, 274, 289, 303).

(R. 16.) The ALJ assessed Chamblis' testimony and the records relating to Chamblis' mental impairment, stating

> As noted above, [Chamblis] also reported that her ability to maintain substantial gainful activity was greatly reduced due to severe symptoms of depression (Hearing testimony). Although she described lack of morale, negative thoughts, chronic fatigue, and concentration deficits, she did not consistently seek or require intensive mental health treatments, psychiatric hospitalizations, or in-home supports. The record shows that [Chamblis] participated in some outpatient counseling therapy services. The sessions primarily focused on family/relationship issues, medication management, communication difficulties, and problem solving. Although she had "ups and downs", the treatment records do not show any periods of significant exacerbation or deterioration. The treatment reports also shows that [Chamblis] did not maintain consistent attendance to her counseling therapy, further suggesting her condition was not as limiting as described (Exhibit 1F, pgs. 237, 243, 245, 250, 251, 252).

(R. 17.)

The Court finds that the ALJ sufficiently explained her reasoning for discrediting Chamblis' subjective complaints and symptoms. *See Herron v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 781, 786 (11th Cir. 2016) (finding that the ALJ adequately explains her reasoning for discrediting the claimant's testimony when that testimony is not fully supported by the medical evidence, when the ALJ fully reviews and summarizes the claimant's medical history, and when the claimant's treating physician noted that the claimant's chronic low back pain was controlled by medication, and that claimant's pain and range of motion was relatively normal). The ALJ based her decision on inconsistencies between Chamblis' testimony and the entire body of evidence within the medical record. Accordingly, the evidence here provides substantial support for the ALJ's evaluation of Chamblis' symptoms, and the record reflects that the ALJ sufficiently addressed Chamblis'

subjective symptoms in accordance with the regulations. *See Werner v. Comm'r of Soc. Sec.,* 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not ... whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."); *Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989) ("[T]he ALJ specifically articulated at least three reasons for rejecting [claimant's] subjective complaints of pain," properly discrediting them). The Court finds no reversible error.

## VI.   CONCLUSION

After review of the administrative record, and considering all of the arguments, the Court finds the Commissioner's decision to deny Chamblis disability is supported by substantial evidence and is in accordance with applicable law. Hence, it is ORDERED as follows:

1. The claimant's motion for summary judgment (Doc. No. 12) is DENIED.

2. The Commissioner's motion for summary judgment (Doc. No. 15) is GRANTED.

3. The decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

DONE this 26th day of March, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE